UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MALIBU MEDIA, LLC, <br><br> Plaintiff, <br> v. <br><br> John Doe subscriber assigned IP address 24.189.135.238, <br><br> Defendant. | No. 7:15-cv-02604-KMK |

## MOTION TO QUASH PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE

RAY BECKERMAN, P.C.

By: _____
Ray Beckerman
*Attorneys for the Defendant*
108-18 Queens Boulevard, 4th Fl.
Forest Hills, NY 11375
Telephone: (718) 544-3434
Facsimile: (718) 559-6584
E-mail: ray@beckermanlegal.com

Jason E. Sweet
BOOTH SWEET LLP
32R Essex Street, Suite 1
Cambridge, MA 02139
Telephone: (617) 250-8619
Facsimile: (617) 250-8883
jsweet@boothsweet.com
*Pro Hac Vice Appearance Pending*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

STANDARD OF LAW ............................................................................................................. 1

ARGUMENT ............................................................................................................................ 2

    I. Malibu Media Fails to Establish a *Prima Facie* Claim of Infringement ................... 2

    II. Malibu Media's Assertion that There is no Alternative Means of Obtaining the Desired Information is Inadequate ............................................................................. 3

        A. Malibu Media Fails to Provide Evidence no Alternative Means are Available ................................................................................................. 3

        B. The Defendant's Identity is not Necessary at this Point to Proceed with the Litigation ................................................................................ 5

    III. Malibu Media Cannot have a Central Need to the Information, Because it has no Intention to Litigate the Matter to Trial ........................................ 5

    IV. Defendant has an Expectation to be Free from Frivolous Lawsuits ........................ 8

CONCLUSION ......................................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ................................................................ 2

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) ............................................................ 1

*Baker v. F & F Inv.*, 470 F.2d 778 (2d Cir. 1972) ................................................................................ 1

*Bessette v. Avco Fin. Servs., Inc.*, 279 B.R. 442 (D.R.I. 2002) ............................................................ 6

*Bowers v. Buchanan*, 110 F.R.D. 405 (S.D. W.Va. 1985) .................................................................... 6

*Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012) ............................................. 8

*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4 (D.D.C.2006) ....................................................................................................................................... 6

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.* 499 U.S. 340 (1991) ................................................... 2

*Greenberg v. United States*, 1990 U.S. Dist. LEXIS 12091 (D. Mass. Sept. 7, 1990) ....................... 6

*In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80 (E.D.N.Y. 2012) ........................................................................................................................... 8

*In re Circle K Corp.*, 199 B.R. 92 (Bankr. S.D.N.Y. 1996) ................................................................. 6

*Ingenuity 13 LLC v. Doe*, 2013 U.S. Dist. LEXIS 17693 (C.D. Cal. February 7, 2013) ................... 3

*London-Sire Records v. Doe 1*, 542 F.Supp.2d 153 (D. Mass. 2008) ................................................. 6

*Malibu Media v. Doe 207.38.208.137*, 2015 U.S. Dist. LEXIS 51579 (S.D.N.Y. April 10, 2015) ..................................................................................................... 1, 4, 5

*Malibu Media v. Doe 207.38.208.137*, 2015 U.S. Dist. LEXIS 76608 (June 5, 2015) ...................... 5

*Malibu Media, LLC v. John Does 1-10*, 2012 U.S. Dist. LEXIS 89286 (C.D. Cal. June 27, 2012) ................................................................................................................... 3

*Malibu Media v. Doe*, 2013 U.S. Dist. LEXIS 141384 (E.D. Mich. Sept. 30, 2013) ........................ 8

*Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 77469 (S.D.N.Y. June 1, 2012) ....................... 8

*Malibu Media v. Doe 66.108.67.10*, 2015 U.S. Dist. LEXIS 87751 (S.D.N.Y. July 6, 2015) ................................................................................................................... 4, 8

*Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165 (S.D.N.Y. 2012) ............................ 1, 2

*Patrick Collins, Inc. v. Does 1-6*, 2012 U.S. Dist. LEXIS 77486 (S.D.N.Y. June 1, 2012) .............. 8

*Salehoo Grp., Ltd. v. ABC Co.*, 722 F.Supp.2d 1210 (W.D. Wash. 2010) ......................................... 6

*Sony Music Entm't v. Does 1-40*, 326 F.Supp.2d 556 (S.D.N.Y. 2004) ............................................. 2

*Taylor v. Litton Medical Products, Inc.*, 19 Fed. R. Serv. 2d 1190 (D. Mass. 1975) ........................ 6

*Theofel v. Farley-Jones*, 359 F.3d 1066 (9th Cir. 2004) ...................................................................... 6

**RULES**

Fed.R.Civ.P. 26(a)(1)(B) ........................................................................................................................ 1

Fed.R.Civ.P. 26(d) ................................................................................................................................... 1

Fed.R.Civ.P. 26(d)(1) .................................................................................................... 1
Fed.R.Civ.P. 26(f) ..................................................................................................... 1, 4
Fed.R.Civ.P. 45 ............................................................................................................ 1
Fed.R.Civ.P. Rule 45(b) .............................................................................................. 6

## INTRODUCTION

This is a copyright infringement case involving the file transfer technology known as BitTorrent. The focus of the litigation is the alleged use of this technology to unlawfully reproduce and distribute via the Internet copyrighted motion pictures. *See* Compl.

In this case, Malibu Media has identified the Defendant, by the Internet protocol ("IP") address 24.189.135.238, assigned by the Internet service provider ("ISP") Cablevision. Through its current motion, Malibu Media seeks to serve a Rule 45 subpoena on Cablevision prior to the Rule 26(f) conference to uncover the identity of the subscriber of this IP address, for the purpose of serving him. *See* Doc. 8.

Defendant seeks to quash Malibu Media's pending motion for lack of good cause.

## STANDARD OF LAW

"A motion seeking a discovery ruling is addressed to the discretion of the district court." *Baker v. F & F Inv.*, 470 F.2d 778, 781 (2d Cir. 1972). "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). When applications for expedited discovery have been made in copyright infringement cases, some courts in this district have used "the flexible standard of reasonableness and good cause," articulated in *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005), to determine whether expedited discovery, pursuant to Rule 26(d), is warranted. *See e.g., Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 172 (S.D.N.Y. 2012) (applying good cause where the plaintiff alleged a *prima facie* case of copyright infringement and permitting expedited discovery to identify defendant Doe No. 1, while also issuing a protective order, due to "the high likelihood of false positive[]" identification). The Court can also consider any factors relevant to the circumstances of this case in reaching its decision. *Malibu Media v. Doe 207.38.208.137*, No. 15-cv-1883, 2015 U.S. Dist. LEXIS 51579, *5 (S.D.N.Y. April 10, 2015).

The following factors frame the "good cause" inquiry in cases of online copyright infringement:

> (1) [the] concrete[ness of the plaintiffs] showing of a *prima facie* claim of actionable harm, ... (2) [the] specificity of the discovery request, ... (3) the absence of alternative means to obtain the subpoenaed information, ... ( 4) [the] need for the subpoenaed information to advance the claim, ... and (5) the [objecting] party's expectation of privacy.

1

*Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2d Cir. 2010) (quoting *Sony Music Entm't v. Does 1-40,* 326 F.Supp.2d 556, 564-65 (S.D.N.Y. 2004)).

Measured against these standards, Malibu Media's subpoena to Cablevision must be quashed.

## ARGUMENT

Malibu Media contends that it has demonstrated good cause under the standards described above. *See* Doc. 8 pp. 7-8.

### I. Malibu Media Fails to Establish a *Prima Facie* Claim of Infringement.

BitTorrent is a peer-to-peer file-sharing protocol that allows users to transfer large files over the Internet by breaking the complete file ("Seed") into small pieces to be downloaded in parts. Other users ("Peers") download a small "torrent" file that contains an index of the pieces and directions for connecting to the Seed. When Peers connect to the Seed, they download pieces of the file at random, and begin sharing each piece once it has completed downloading. After all the pieces are downloaded, the BitTorrent software reassembles the pieces into a complete file for the Peer to view.

It is doubtful whether Malibu has in fact established a *prima facie* claim here. A *prima facie* copyright infringement claim consists of two elements: (1) ownership of a valid copyright,[1] and (2) copying of constituent elements of the work that are original. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.* 499 U.S. 340, 361 (1991).

The sole piece of evidence in Malibu Media's possession that an infringement occurred is a single PCAP file. Herein, the file the Defendant is accused of downloading is 83.35GB in size. By way of example, a torrent for a 700MB sized movie has files that can range in size from 32kB to 64kB. At 32kB, the run-time of any one piece would be 241 milliseconds. At 64kB, 482 milliseconds. Plaintiff's case therefore is premised upon the blink of an eye. Such evidence is at best, insufficient to support its claim.

> The first problem is how Plaintiff concluded that the Defendants actually downloaded the entire copyrighted video, when all Plaintiff has as evidence is a "snapshot observation." (AC ¶ 23.) This snapshot allegedly shows that the Defendants were downloading the copyrighted work-at least at that moment in time. But downloading a large file like a video takes time; and depending on a user's Internet-connection speed, it may take a long time. In fact, it may take so long that the user may have

---

[1] As observed in *Next Phase Distribution, Inc. v. John Does 1-27,* 284 F.R.D. 165, 171 (S.D.N.Y. 2012), "if the Motion Picture is considered obscene, it may not be eligible for copyright protection."

> terminated the download. The user may have also terminated the download for other reasons. To allege copyright infringement based on an IP snapshot is akin to alleging theft based on a single surveillance camera shot: a photo of a child reaching for candy from a display does not automatically mean he stole it. No Court would allow a lawsuit to be filed based on that amount of evidence.
>
> What is more, downloading data via the Bittorrent protocol is not like stealing candy. Stealing a piece of a chocolate bar, however small, is still theft; but copying an encrypted, unusable piece of a video file via the Bittorrent protocol may not be copyright infringement. In the former case, some chocolate was taken; in the latter case, an encrypted, unusable chunk of zeroes and ones. And as part of its prima facie copyright claim, Plaintiff must show that Defendants copied the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). If a download was not completed, Plaintiff's lawsuit may be deemed frivolous.

*Ingenuity 13 LLC v. Doe*, No. 12-cv-8333, 2013 U.S. Dist. LEXIS 17693, *6-8 (C.D. Cal. February 7, 2013).

Even if Plaintiff could trace the BitTorrent activity in question to the subscriber, Malibu Media fails to present any evidence that the Defendant either uploaded, downloaded, or even possessed a complete copyrighted video file. Compl. ¶ 20 ("IPP International UG downloaded from Defendant *one or more bits* of each file hash listed on Exhibit A.") (emphasis added); Doc. 11 ¶ 16 ("Our software downloaded one or more bits of each file hash listed on Exhibit A from the IP address referenced on Exhibit A."). Another district court has noted that

> Individual BitTorrent file pieces are worthless ... If it is the case that a Doe Defendant logged onto the BitTorrent swarm, downloaded and then uploaded a single piece to the IPP server, and then logged off, all he has done is transmit an unusable fragment of the copyrighted work. ... [T]he Court notes that Malibu's case is weak if all it can prove is that the Doe Defendants transmitted only part of all the BitTorrent pieces of the copyrighted work.

*Malibu Media, LLC v. John Does 1-10*, No. 12-cv-3623, 2012 U.S. Dist. LEXIS 89286, *3 (C.D. Cal. June 27, 2012).

## II. Malibu Media's Assertion that There is no Alternative Means of Obtaining the Desired Information is Inadequate.

### A. Malibu Media Fails to Provide Evidence no Alternative Means are Available.

Malibu Media explains that use of BitTorrent software is anonymous except insofar as it requires a user to broadcast an IP address. *See* Doc. 8 p. 3. As such, it argues that no alternative means exist to obtain the Defendant's "true identity," [*id.* p. 10 ] other than receiving the information from the Defendant's ISP, Malibu Media cites to Paige's statement that, "[o]nce provided with the IP

3

Address, plus the date and time of the detected and documented activity, ISPs can use their subscriber logs to identify the name, address, email address and phone number of the applicable subscriber in control of that IP address at the stipulated date and time." *Id.* p. 11.

Plaintiff's assertion that there is no alternative means of obtaining the desired information is inadequate. The only support for it comes from the declaration of Patrick Paige who lacks personal knowledge of the methodology used by ISPs to match the IP address with its registrant. *Doe 207.38.208.137*, 2015 U.S. Dist. LEXIS 51579, *6.

> However, Paige, a former detective in the computer crimes unit of the Palm Beach County Sheriff's Department, and a current employee of Computer Forensics, LLC, has no personal knowledge of what information "ISPs can use" or what procedures, if any, ISPs employ or the substantive work they perform in analyzing their data or identifying their subscribers. Paige also failed to establish any basis for his statement that "[t]he only entity able to correlate an IP address to a specific individual at a given date and time is the Internet Service Provider," given that he has never been employed by any ISP, and he does not claim he has personal knowledge of what methods, if any, are used by ISPs or any other entity to correlate an IP address to a specific individual at a given date and time. Moreover, no competent evidence was submitted by the plaintiff in support of its contention that "there is no other way for Plaintiff to obtain Defendant's identity, except by serving a subpoena on Defendant's ISP demanding it." The plaintiff's conclusory, unsupported contention that no alternative means exist to obtain the defendant's identity except by serving a subpoena on the defendant's ISP, without more, does not militate in favor of finding good cause. The plaintiff's submissions are devoid of any information describing what, if any, alternative means the plaintiff attempted to use to obtain the defendant's identity, that led the plaintiff to its conclusion that "no alternative means exist to obtain" it except by serving a subpoena on the defendant's ISP. If, as the plaintiff contends, no alternative means exist to obtain the defendant's identity except by serving a subpoena on the defendant's ISP, that contention must be supported by competent evidence, which is what the plaintiff failed to provide here.

*Id.*, at *6-8 (rejecting Malibu Media's motion for expedited discovery on the merits).

> Moreover, the Court has concerns respecting any order that may direct a non-party to: (i) effect service of a *Rule 45* subpoena served upon it and an order of the Court on one its customers; (ii) refrain from acting until a certain time; (iii) preserve any subpoenaed information; (iv) confer with the plaintiff; and (v) refrain from assessing any charge in advance of providing the information requested in the subpoena. These directives include matters beyond the scope of those contemplated by *Rules 45* and *26 of the Federal Rules of Civil Procedure* and implicate jurisdictional issues related to directives and prohibitions such as are contained in Judge Ramos's order on which the plaintiff relies.

*Id.*, 2015 U.S. Dist. LEXIS 76608, *9 (June 5, 2015) (affirming Magistrate's denial). See also, *Malibu Media v. Doe 66.108.67.10*, No. 15-cv-14359, 2015 U.S. Dist. LEXIS 87751, *16 (S.D.N.Y.

July 6, 2015). ("The Paige declaration that Judge Fox found deficient nearly three months ago is identical to the Paige declaration submitted in support of this motion. It fares no better this time.").[2]

### B. The Defendant's Identity is not Necessary to Proceed at this Point with the Litigation.

Rather than the one-sided discovery Malibu Media seeks, Defendant's appearance vitiates the need for the subpoena prior to the Rule 26(f) conference and places both parties on equal footing in the discovery process.

As Defendant's attorney has agreed and is authorized to accept service, Plaintiff's argument that it can not proceed with this action without discovering his identity is precluded. Plaintiff asked for and was given authority to issue a subpoena to Defendant's ISP, for the primary purpose of being able to *serve process* and proceed with this action. See Doc. 8 p. 10 ("This is all specific information that is in the possession of the Defendant's ISP that will enable Plaintiff to serve process on Defendant."); *id.* p. 11 ("Without learning the Defendant's true identity, Plaintiff will not be able to serve the Defendant with process and proceed with this case."). Malibu has not identified any harm in waiting for this information.

The moment Defendant's attorney came forward, Malibu Media's need for expedited discovery to proceed with this action ceased. Although the Defendant's actions may be relevant to Malibu Media's infringement claims, his identity prior to a discovery conference is not. In other words, the Defendant's identity is irrelevant as to whether Malibu Media proceed with this action. Knowing the Defendant's identity prior to a discovery conference will not cause Plaintiff any cognizable harm at this time, and allow both parties an equal opportunity at discovery.

### III. Malibu Media Cannot have a Central Need to the Information, Because it has no Intention to Litigate the Matter to Trial.

A plaintiff seeking to identify a anonymous defendant "must demonstrate that the specific information sought by subpoena is necessary to identify the defendant and that the defendant's identity is relevant to the plaintiff's case." *Salehoo Grp., Ltd. v. ABC Co.*, 722 F.Supp.2d 1210, 1216 (W.D. Wash. 2010). Here, no proceedings beyond pre-trial practice is envisioned by Malibu Media, therefore the information is not necessary or relevant to the case, because there is no case. A nonparty cannot be subpoenaed to produce documents pursuant to Rule 45(b) if there is no legal proceeding

---

[2] Also worth noting, is that Paige's Declaration submitted in *Doe 207.38.208.137*, 2015 U.S. Dist. LEXIS 51579 is identical to the one in this matter—down to the ink stain on Paige's signature.

contemplated. *Taylor v. Litton Medical Products, Inc.*, 19 Fed. R. Serv. 2d 1190, 1191-92 (D. Mass. 1975).

> [A] subpoena duces tecum is limited to use in conjunction with a deposition and trial. One reason for the restrictive interpretation is the potential for abuse of the subpoena. ... A procedure which allowed parties to send out subpoenas *duces tecum* at will could result in a form of one-sided discovery.

*Bowers v. Buchanan*, 110 F.R.D. 405, 406 (S.D. W.Va. 1985) (citing cases); see also *In re Circle K Corp.*, 199 B.R. 92, 102-03 (Bankr. S.D.N.Y. 1996); *Theofel v. Farley-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004) ("The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused."). To justify a Rule 45 subpoena Plaintiff must have a "genuine intent to take" discovery for use in conjunction with deposition and trial. *Greenberg v. United States*, Civ. A. No. 89-2390-MC, 1990 U.S. Dist. LEXIS 12091, *5 (D. Mass. Sept. 7, 1990) (citing, inter alia, *Bowers*); see also *London-Sire Records v. Doe 1*, 542 F.Supp.2d 153, 164 (D. Mass. 2008) (requiring showing of "a central need for the subpoenaed information to advance the claim"). Without any genuine defendants, there is no basis for discovery. *Bessette v. Avco Fin. Servs., Inc.*, 279 B.R. 442, 454 (D.R.I. 2002) ("This Court cannot sanction the further progression of an adversarial proceeding where there is no opposing party."); *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 7 (D.D.C. 2006) (denying motion for expedited discovery where "plaintiffs are not seeking expedited discovery to gain evidence to get the court to preserve the status quo. They want to gather all the evidence they would need to radically transform the status quo, on an expedited basis.")

Malibu Media has no interest in actually litigating the case, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the Defendant. Other courts have questioned the propriety of Malibu Media receiving a windfall at the expense of a defendant:

> The analysis focuses on the period before discovery for two reasons: (1) the pattern exhibited by [Malibu Media] indicates a lack of intent to litigate these claims, and (2) these claims are not generally expected to go to trial. A clear pattern has been established in these copyright infringement cases: plaintiff files a mass claim under the guise of judicial economy and cost and convenience benefits, issues a third-party subpoena on Internet Service Providers (ISPs) before a Rule 26(f) conference to discover the Does' identities, and then pressures the identified Does to settle privately. 2012 U.S. Dist. LEXIS 89286, [WL] at *5. As the Magistrate Judge noted, "[T]he Court will not automatically hold plaintiff responsible for the alleged abuses of others in its industry." However, the Court may look at *this* plaintiff's pattern of conduct to see whether *it* has abused the joinder process, from which we can infer

whether the Plaintiff actually intends to litigate such claims. A brief look at the docket reveals that in *this* district alone, the Plaintiff has closed 10 joinder claims that it filed within the past year. Of the 10 claims, every single one was voluntarily dismissed before a Rule 26(f) scheduling conference was even scheduled. And in these cases, settlement, if any, never accounted for all of the Does, meaning there was always a remainder of unresolved Does. Perhaps even more insightful is the Plaintiffs history with claims against individual Does. In this district alone, the Plaintiff has closed 12 individual claims that it filed within the past year. Of the 12 individual claims, 5 were settled before a 26(f) conference was scheduled. Of the 7 other cases, 6 were voluntarily dismissed before a 26(f) conference was scheduled and 1 after the conference was scheduled but before it was held. The fact that all 22 of the Plaintiff's cases within the past year were voluntarily dismissed or otherwise closed before a 26(f) conference raises a very strong inference that this plaintiff in particular does not actually intend to proceed with these claims beyond the pleadings stage.

While the Plaintiff may argue that it simply intends to refile individual claims against Does whose identities are uncovered during a joinder claim, a look at the court records dispels this proposition. Of the 225 Does voluntarily dismissed by the Plaintiff from the 11 joined claims (i.e. including the instant case), the Plaintiff has not filed subsequent follow-up individual claims against any one of them. This clearly shows a lack of intent to actually litigate these claims because had the Plaintiff been using the judicial system as a "tool," it would have refiled individual claims against newly identified Does. Even notwithstanding the number of settlements resulting from all of the Plaintiffs joinder claims—7 out of 280 defendants—one would expect the Plaintiff to have filed individual claims against *some* percentage of newly identified Does, even if those claims do not ultimately proceed to trial.

Notwithstanding the voluntary dismissals in the last month, the Plaintiff has not filed individual claims against any Does that were voluntarily dismissed as long as about nine months ago. If the Plaintiff actually intended to litigate these claims, it would have filed individual claims shortly after voluntary dismissal. While it is possible that this use of the judicial system was 100% effective as a "tool" in facilitating private settlements, it is much more likely that the Plaintiff is using the system to achieve settlement of claims that it has no intention of litigating.

These types of claims are generally not expected to go to trial. There are 6 possible outcomes for Doe defendants: (1) a Doe's identity is undiscoverable for various reasons, (2) an identified Doe cannot be served for various reasons, (3) a culpable Doe settles before trial instead of offering a defense, (4) a culpable Doe argues a defense anyway, (5) an innocent Doe settles before trial despite having a valid defense, or (6) an innocent Doe argues a defense. It is this fifth category—innocent Does who settle before trial despite having a valid defense—that is the reason why the vast majority of cases do not proceed to trial. Even though innocent Does technically have the legal right to choose between settling or arguing a defense, it is a hollow right for all practical purposes. The reality is that many innocent Does settle just to avoid the enormous amount of time and expense associated with these types of cases.

*Malibu Media v. Doe*, No. 12-cv-13312, 2013 U.S. Dist. LEXIS 141384, *5-9 (E.D. Mich. Sept. 30, 2013).

Malibu's corporate strategy relies on aggressively suing for infringement and obtaining accelerated discovery of the IP address holder's identity from the ISP. It

then seeks quick, out-of-court settlements which, because they are hidden, raise serious questions about misuse of court procedure.

*Doe 66.108.67.10*, 2015 U.S. Dist. LEXIS 87751, *11.

That extortive purpose cannot justify any recourse to the Court's aid.

**IV. Defendant has an Expectation to be Free from Frivolous Lawsuits.**

Malibu has not established a violation by the subscriber to whom the relevant IP address is registered.

> The fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer. Indeed, the true infringer could just as easily be a third party who had access to the internet connection, such as a son or daughter, houseguest, neighbor, or customer of a business offering internet connection.

*Patrick Collins, Inc. v. Does 1-6*, No. 12-cv-2964, 2012 U.S. Dist. LEXIS 77486, *3 (S.D.N.Y. June 1, 2012) (internal citations omitted); see also *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) ("[T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time."); *Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) (finding that approximately 30% of John Does identified by their internet service providers are not the individuals who actually downloaded the allegedly infringing films).

> The risk of misidentification is great in a world with ubiquitous Wi-Fi, and given courts' concerns that these sorts of allegations - especially by this plaintiff - are likely to coerce even innocent defendants into settling, the risk of misidentification is important to protect against.

*Doe 66.108.67.10*, 2015 U.S. Dist. LEXIS 87751, *14.

> Indeed, the true infringer could just as easily be a third party who had access to the internet connection, such as a son or daughter, houseguest, neighbor, or customer of a business offering internet connection. There is real risk that defendants might be falsely identified and forced to defend themselves against unwarranted allegations. In such cases, there is a risk not only of public embarrassment for the misidentified subscriber, but also that the innocent subscriber may be coerced into an unjust settlement with the plaintiff to prevent the public filing of unfounded allegations. The risk of a shake-down is compounded when the claims involve allegations that a defendant downloaded and distributed sexually explicit material.

*Malibu Media, LLC v. Doe*, No. 12-cv-2950, 2012 U.S. Dist. LEXIS 77469, *2-5 (S.D.N.Y. June 1, 2012) (collecting cases).

8

## CONCLUSION

Wherefore, Defendant respectfully requests that the order granting Malibu Media's motion for leave to take expedited discovery be revoked and the subpoena issued thereunder to Cablevision be quashed.

Dated: September 9, 2015

Respectfully,

RAY BECKERMAN, P.C.

By: _____
Ray Beckerman
*Attorneys for the Defendant*
108-18 Queens Boulevard, 4th Fl.
Forest Hills, NY 11375
Telephone: (718) 544-3434
Facsimile: (718) 559-6584
E-mail: ray@beckermanlegal.com

Jason E. Sweet
BOOTH SWEET LLP
32R Essex Street, Suite 1
Cambridge, MA 02139
Telephone: (617) 250-8602
Facsimile: (617) 250-8883
jsweet@boothsweet.com

*Pro Hac Vice Appearance Pending*